UNITED STATES of America, Plaintiff–Appellee,

v.

Eileen CROWELL, Defendant–Appellant.

No. 03–30041.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 6, 2003.

Filed June 30, 2004.

Stephen R. Sady, Chief Deputy Federal Public Defender, Portland, OR, for the defendant-appellant.

Michael W. Mosman, United States Attorney, J. Richard Scruggs, Assistant United States Attorney, Portland, OR, for the plaintiff-appellee.

Before ALARCÓN, RAWLINSON, and BYBEE, Circuit Judges.

BYBEE, Circuit Judge:

This case presents the question whether a person convicted of a crime may collaterally attack her conviction by moving to expunge the records of her conviction. We hold that she cannot, and we affirm the judgment of the district court.

## FACTS

In 1990, a federal grand jury indicted the defendant, Eileen Crowell, on six counts, based on allegations of conspiracy to manufacture, distribute and possess with intent to distribute live marijuana plants, *see* 18 U.S.C. § 2; 21 U.S.C. §§ 841, 846, and the filing of false tax returns for 1986, 1987, and 1988, *see* 26 U.S.C. § 7206. The indictment also charged her husband and a third defendant.

After extensive negotiations, Crowell entered an *Alford* plea—that is, she pled guilty while maintaining that she was innocent, *see North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970)—to the single charge of filing a false tax return for 1986. Crowell appeared for sentencing in district court in 1991. The Government presented the evidence that it believed supported the Defendant's plea on the tax charge. Considering the Government's evidence against her, the district court found that there was an adequate factual basis for Crowell's plea. *See id.* at 37–38, 91 S.Ct. 160.

The district court carefully questioned Crowell to determine whether she understood the nature of the charges against her. *See United States v. Timbana*, 222 F.3d 688, 702–03 (9th Cir.2000). Under penalty of perjury, Crowell affirmed that she understood and that her plea was voluntary. The court proffered extra time to Crowell in case she wanted to change her mind late in the pleading stage. After

satisfying itself that Crowell was voluntarily pleading guilty, the court entered judgment on Crowell's plea, dismissed the remaining counts against her, and sentenced her to three years probation.

Eleven years later, in 2002, Crowell filed a motion in her original criminal case to expunge her conviction. Crowell advanced three grounds for her motion: first, that there was an inadequate basis for her *Alford* plea; second, that her attorney had a conflict of interest because he had initially been hired to assist with her husband's defense; and third, that her *Alford* plea rested on financial records obtained from a search and seizure that was later declared unlawful at her husband's pre-trial hearing.[1] The district court concluded that each of her claims lacked merit and denied her claims. Crowell timely appealed.

■ We review *de novo* the district court's jurisdiction to entertain a motion for expungement. *United States v. Sumner*, 226 F.3d 1005, 1009 (9th Cir.2000). *See also United States v. Bravo–Diaz*, 312 F.3d 995, 997 (9th Cir.2002) (the court reviews de novo a district court's assertion of jurisdiction under the All Writs Act).

## DISCUSSION

■ A defendant who moves to expunge her conviction does not seek to vacate or set aside her conviction. "Expunge" (to erase) and "vacate" (to nullify or to cancel) denote very different actions by the court. When a court vacates a conviction, it sets aside or nullifies the conviction and its attendant legal disabilities; the court does not necessarily attempt to erase the fact of the conviction. *See Dickerson v. New Banner Institute, Inc.*, 460 U.S. 103, 114–22, 103 S.Ct. 986, 74 L.Ed.2d 845 (1983).

In contrast, a defendant who seeks expungement requests "the judicial editing of history." *Rogers v. Slaughter*, 469 F.2d 1084, 1085 (5th Cir.1972). Although "expungement" may mean different things in different states, in general when a defendant moves to expunge records, she asks that the court destroy or seal the records of the fact of the defendant's conviction and not the conviction itself. *See United States v. Sweeney*, 914 F.2d 1260, 1262 (9th Cir.1990) ("an expunction order is similar to an order not to report a conviction"); *United States v. Johnson*, 941 F.2d 1102, 1111 (10th Cir.1991) ("expunge" refers to the physical destruction of information with respect to criminal records). *See also Dickerson*, 460 U.S. at 121–22, 103 S.Ct. 986 (noting that the variety of state expungement statutes creates "nothing less than a national patchwork"). Accordingly, expungement, without more, "does not alter the legality of the previous conviction and does not signify that the defendant was innocent of the crime to which he pleaded guilty." *Id.* at 115, 103 S.Ct. 986.

We have recognized two sources of authority by which courts may expunge records of criminal conviction: statutes and our inherent authority. By statute, Congress has set the conditions by which the courts may expunge records of federal convictions in particular cases. For example, Congress has directed that certain persons who are convicted and sentenced to probation for violating the Controlled Substances Act, 21 U.S.C. § 844, and were less than twenty-one years old at the time of the offense, may seek expungement. 18 U.S.C. § 3607(c). In such cases, Congress has not only specified the conditions for expungement, but defined the act of expungement. *See id.* § 3607(b) (providing

---

1. Crowell's husband initially pled guilty, and then subsequently withdrew his plea. After negotiating a new plea agreement, Crowell's husband pled guilty again and received a mandatory ten-year sentence.

that the Department of Justice may, in any event, retain a nonpublic record of the disposition). Congress has also declared the legal effect of such expungement: "A person concerning whom such an order has been entered shall not be held thereafter under any provision of law to be guilty of perjury, false swearing, or making a false statement by reason of his failure to recite or acknowledge such arrests or institution of criminal proceedings, or the results thereof, in response to an inquiry made of him for any purpose." *Id.* § 3607(c). *See also* 21 U.S.C. § 844a(j) (describing similar conditions and restrictions). Similarly, in disciplinary matters involving employees of the Veterans Health Administration, the Secretary of Veterans Affairs may order various remedies to reinstate employees, "including expungement of records relating to the action." 38 U.S.C. § 7462(d)(1). Congress has further directed that DNA analysis be expunged from certain indices when a conviction has been overturned. 10 U.S.C. § 1565(e); 42 U.S.C. § 14132(d). *See also* 18 U.S.C. § 921(a)(20), (33)(B)(ii) (defining certain crimes to exclude convictions that have been expunged).[2]

■ Congress has not expressly granted to the federal courts a general power to expunge criminal records. Nevertheless, 8713 we have asserted that federal courts have inherent authority to expunge criminal records in appropriate and extraordinary cases. We have held that in criminal proceedings "district courts possess ancillary jurisdiction to expunge criminal records. That jurisdiction flows out of the congressional grant of jurisdiction to hear cases involving offenses against the United States pursuant to 18 U.S.C.

§ 3231." *Sumner*, 226 F.3d at 1014. We have also held, however, that district courts do not have the power "to expunge a record of a valid arrest and conviction solely for equitable considerations," because "the expungement of the record of a valid arrest and conviction usurps the powers that the framers of the Constitution allocated to Congress, the Executive, and the states." *Id.* Accordingly, "a district court's ancillary jurisdiction is limited to expunging the record of an unlawful arrest or conviction, or to correcting a clerical error." *Id.*

■ Crowell did not seek expungement under any statutory provision or rule. Rather, she filed her motion under the original docket number before the same district court judge who accepted her *Alford* plea. Aware of the court's holding in *Sumner*, Crowell acknowledged that she had no basis for seeking equitable relief from the disability of her conviction. Instead, Crowell argued to the district court that she had *legal* grounds for expungement because her record of conviction was based on "an unlawful arrest or conviction," *Sumner*, 226 F.3d at 1014, because her *Alford* plea was not knowing, intelligent, or voluntary; the evidence against her resulted from an illegal search; and she received ineffective assistance of counsel in violation of the Sixth Amendment. Crowell's motion is, nevertheless, unusual. Unlike other motions for expungement we have approved, Crowell has not alleged that a record of her conviction exists in spite of an acquittal or a vacated conviction. *See Maurer v. Individually and as Members of L.A. County Sheriff's Dept.*, 691 F.2d 434 (9th Cir.1982) (affirming the

---

2. In several cases, we have addressed expungement in the context of the Federal Youth Correction Act's direction to "set aside the conviction." *See United States v. Hovsepian*, 307 F.3d 922, 928–30 (9th Cir.2002);

*Sumner*, 226 F.3d at 1009–10. The Federal Youth Corrections Act, 18 U.S.C. § 5010(a) (repealed in 1984), continues to apply to persons convicted while it was in effect. *See Sumner*, 226 F.3d at 1008 n. 2.

availability of expungement of arrest record following acquittal). *Cf. Burnsworth v. Gunderson*, 179 F.3d 771 (9th Cir.1999) (affirming expungement of prison discipline records where there was "no evidence" to support the administrative charge). Rather, Crowell has used her motion for expungement as a post-conviction vehicle to challenge collaterally the lawfulness of her conviction. Crowell asks, effectively, that we vacate her conviction in order to expunge her records. This, we conclude, we cannot do.

The Constitution and statutes of the United States authorize various means by which defendants may collaterally attack a conviction. Defendants convicted of federal crimes may seek collateral relief through a presidential pardon. U.S. CONST. art. II, § 2, cl. 1. However, "[o]ne who is pardoned is merely released from the disabilities attendant upon conviction and has his civil rights restored." *United States v. Doe*, 556 F.2d 391, 392 (6th Cir. 1977). He is not entitled to erasure of the record of his conviction. *United States v. Noonan*, 906 F.2d 952 (3d Cir.1990). Preeminent among the statutory mechanisms is, of course, a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct a sentence, "a remedy identical in scope to federal habeas corpus." *Davis v. United States*, 417 U.S. 333, 343, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974). Section 2255 provides that prisoners

> in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in viola-

tion of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

In order to obtain relief under this section, a prisoner must allege one of the enumerated grounds and currently be in custody serving a sentence imposed by a federal court. Section 2255 does not provide for expungement, although we have suggested that, in an appropriate case, expungement might be granted following a prisoner's successful motion pursuant to § 2255. *Sumner*, 226 F.3d at 1012 & n. 6.

A defendant may also seek relief under the All Writs Act, 28 U.S.C. § 1651, which "fill[ed] the interstices of the federal post-conviction remedial framework." [3] *Bravo–Diaz*, 312 F.3d at 997 n. 2 (9th Cir.2002) (quoting *United States v. Ayala*, 894 F.2d 425, 428 (D.C.Cir.1990)). *See also Yasui v. United States*, 772 F.2d 1496, 1498 (9th Cir.1985) (the writ of error coram nobis "fills a void in the availability of post-conviction remedies in federal criminal cases.") In particular, we have recognized that petitions for *coram nobis* and *audita querela* may provide relief for persons who have grounds to challenge the validity of their conviction but, because they are not yet in custody or are no longer in custody, are not eligible for relief pursuant to § 2255.[4] "[T]he *coram nobis* writ allows a

---

**3.** Although Fed.R.Civ.P. 60(b) expressly abolishes common law writs, including *coram nobis* and *audita querela*, in civil proceedings, such writs survive as a means of collaterally attacking criminal convictions. *United States v. Morgan*, 346 U.S. 502, 510–11, 74 S.Ct. 247, 98 L.Ed. 248 (1954).

**4.** We have explained that the difference between *coram nobis* and *audita querela* is largely "one of timing, not substance." *Doe v. INS*, 120 F.3d 200, 203 n. 4 (9th Cir.1997). Whereas *coram nobis* could attach to a judgment that was infirm at the time it was rendered (for reasons that later came to light), *audita querela* attached to a judgment that

court to vacate its judgments 'for errors of fact ... in those cases where the errors [are] of the most fundamental character, that is, such as rendered the proceeding itself invalid.'" *Hirabayashi v. United States*, 828 F.2d 591, 604 (9th Cir.1987) (quoting *United States v. Mayer*, 235 U.S. 55, 69, 35 S.Ct. 16, 59 L.Ed. 129 (1914)) (second alteration in *Hirabayashi*). *See also United States v. Monreal*, 301 F.3d 1127, 1131–32 (9th Cir.2002), *cert. denied*, 537 U.S. 1178, 123 S.Ct. 1008, 154 L.Ed.2d 925 (2003); *United States v. Taylor*, 648 F.2d 565, 570 (9th Cir.), *cert. denied*, 454 U.S. 866, 102 S.Ct. 329, 70 L.Ed.2d 168 (1981). The writ of *audita querela* " 'provides relief from the consequences of a conviction when a defense or discharge arises subsequent to entry of the final judgment. The defense or discharge must be a legal defect in the conviction, or in the sentence which taints the conviction.'"[5] *Doe v. INS*, 120 F.3d at 203 (quoting *United States v. Johnson*, 962 F.2d 579, 582 (7th Cir.1992)).

In effect, Crowell seeks to add a motion for expungement of records to the list of post-conviction actions by which she may challenge her conviction. In providing for relief pursuant to § 2255, Congress has provided a near-comprehensive scheme for post-conviction collateral relief for those in custody. *See Ex Parte McCardle*, 73 U.S. (6 Wall.) 318, 325–26, 18 L.Ed. 816 (1868). As earlier noted, Congress has further authorized federal courts through the All Writs Act to fill in the post-conviction gaps. Proper regard for Congress and its careful and ongoing attention to post-conviction remedies demands that we not alter this scheme and enlarge our own power by the creation of new post-conviction reme-

dies. *See Matus–Leva v. United States*, 287 F.3d 758, 761 (9th Cir.2002) (holding petitioner may not resort to *coram nobis* as a means of bypassing habeas relief under AEDPA, even if the petitioner fails to meet AEDPA's requirements), *cert. denied*, 537 U.S. 1022, 123 S.Ct. 544, 154 L.Ed.2d 431 (2002); *Owens v. Boyd*, 235 F.3d 356, 360 (7th Cir.2000) (precluding *coram nobis* as a means available to avoid statutory restrictions on federal habeas relief); *United States v. Baptiste*, 223 F.3d 188, 189–90 (3d Cir.2000) (per curiam) (holding that *coram nobis* was unavailable to prisoner who remained in custody but was barred from filing a successive petition for habeas corpus). *See also Heck v. Humphrey*, 512 U.S. 477, 480–81, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) (plaintiffs may not challenge the basis for their conviction through action under 42 U.S.C. § 1983); *Martin v. Sias*, 88 F.3d 774, 775 (9th Cir.1996) (applying *Heck* to *Bivens* actions). Were we to hold that Crowell may challenge the lawfulness of her conviction through a motion for expungement, we would usurp Congress's power to control the terms on which petitioners may challenge their convictions.

■ That Crowell invoked our ancillary jurisdiction by filing her motion under the original docket number does not affect our analysis. As we noted in *Sumner*, "[a] district court has 'inherent jurisdiction within the time allowed for appeal to modify its judgment for errors of fact or law or even to revoke a judgment.'" 226 F.3d at 1013 (quoting *United States v. Villapudua–Perada*, 896 F.2d 1154, 1156 (9th Cir.1990)). Once the time for appeal has elapsed, Fed. R.App. P. 4(b) is a "jurisdictional limitation

---

was correct when rendered, but was later rendered infirm by events that occurred after the judgment. As with § 2255, the All Writs Act, *coram nobis*, and *audita querela* do not provide for expungement.

**5.** *But see Doe v. INS*, 120 F.3d at 204 & n. 5 (noting that several courts have questioned whether *audita querela* survives at all).

upon the powers of the district court after a judgment of conviction has been entered." *Id.*

Without a showing that she has a legal ground for expungement following the vacating or setting aside of her conviction, Crowell fails to make out a prima facie claim for expungement. Absent a viable legal ground for expungement, her claim falls into the category of the solely "equitable" claim for expungement. Accordingly, the district court lacked jurisdiction to consider Crowell's claims. *Sumner,* 226 F.3d at 1014–15. *See also Bravo–Diaz,* 312 F.3d at 998.

We do not hold that a defendant can never obtain expungement of criminal records. Rather, we conclude that Crowell cannot use a motion for expungement to make an "end-run" around recognized post-conviction remedies, such as habeas corpus, *coram nobis,* and *audita querela,* or others that Congress may create. *See Matus–Leva,* 287 F.3d at 761. Having been lawfully convicted, if Crowell wishes to expunge the records of her conviction, she must first obtain a judgment that her conviction was unlawful. Because she is no longer in custody, Crowell may file for *coram nobis, audita querela,* or a presidential pardon, as appropriate. We express no view as to whether she would be eligible for such relief.

■ Once a petitioner has succeeded in getting her conviction vacated, a district court may then determine whether the petitioner has asserted circumstances extraordinary and unusual enough that would merit expungement of her criminal judicial records.[6] We underscore what our cases have clearly held: even where a conviction has been held unlawful and vacated, expungement remains a "narrow, extraordinary exception," one "appropriately used only in extreme circumstances." *United States v. Smith,* 940 F.2d 395, 396 (9th Cir.1991) (per curiam). Thus, even if Crowell could demonstrate that a federal court had vacated, set aside, or otherwise invalidated her conviction, she might be eligible for, but would not be entitled to, the extraordinary remedy of expungement. *See Rogers,* 469 F.2d at 1085 (denying expungement despite district court's setting aside of unconstitutional conviction). *See also United States v. Friesen,* 853 F.2d 816, 817–18 (10th Cir.1988) (attorney acquitted on all counts of conspiracy not entitled to expungement of criminal records); *Allen v. Webster,* 742 F.2d 153, 155 (4th Cir.1984) (acquittee seeking expungement was not entitled to it absent "exceptional circumstances"); *United States v. Schnitzer,* 567 F.2d 536, 539–40 (2d Cir. 1977) (even following dismissal of indictment, expungement not warranted), *cert. denied,* 435 U.S. 907, 98 S.Ct. 1456, 55 L.Ed.2d 499 (1978); *United States v. Linn,* 513 F.2d 925, 927–28 (10th Cir.) (acquittal alone insufficient to warrant expungement of defendant's arrest record), *cert. denied,* 423 U.S. 836, 96 S.Ct. 63, 46 L.Ed.2d 55 (1975).

**6.** Even where a conviction has been set aside and expungement of judicial records deemed appropriate, expungement of *executive* records might not be. We maintain control over judicial records, but Congress has instructed the executive to maintain certain records. *See* 28 U.S.C. § 534(a)(1)(1994) ("The Attorney General shall acquire, collect, classify, and preserve identification, criminal identification, crime, and other records"); *id.* § 534(a)(4) (the Attorney General shall "exchange such records and information with, and for the official use of, authorized officials of the Federal Government, the States, cities, and penal and other institutions"). *See also Sumner,* 226 F.3d at 1014 (discussing the executive's obligation). We may not control executive records through our ancillary jurisdiction any more than the executive, through its pardon power, may order the expungement of judicial records. *Noonan,* 906 F.2d at 955.

## CONCLUSION

Crowell may not employ a motion for expungement as a substitute for an appropriate post-conviction challenge to her conviction. Insofar as she has not obtained a judgment that her conviction must be vacated or otherwise set aside, Crowell sought equitable relief, and the district court lacked ancillary jurisdiction to grant her motion. The judgment of the district court is AFFIRMED.