NOT RECOMMENDED FOR PUBLICATION
File Name: 15a0031n.06

No. 14-5488

**FILED**

**JAN 0 9 2015**

**UNITED STATES COURTS OF APPEALS
FOR THE SIXTH CIRCUIT**

**DEBORAH S. HUNT, Clerk**

| | | |
|---|---|---|
| ERIC LAUBIS, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| KATHY WITT, Individually, and as Sheriff of | ) | COURT FOR THE EASTERN |
| Fayette County, Kentucky, | ) | DISTRICT OF KENTUCKY |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |

BEFORE: SUHRHEINRICH and GRIFFIN, Circuit Judges; LEITMAN, District Judge.[1*]

SUHRHEINRICH, Circuit Judge.

Plaintiff Eric Laubis sued Defendant Kathy Witt, individually and in her capacity as Sheriff of Fayette County, under 42 U.S.C. § 1983, for violating his Second Amendment and Due Process rights after she refused to return his firearms pursuant to the Lautenberg Amendment, 18 U.S.C. § 922(g)(9). The district court dismissed the complaint for failure to state a claim and Laubis appeals.

**I.**

Laubis had an intimate partner, Darlene Perkins. In February 2007, Laubis was charged with "Assault 4th Degree Domestic Violence Minor Injury" to Perkins.[1] ID# 25. On May 17, 2007, Laubis pleaded guilty to a lesser charge of harassment, which states that "[a] person is

---

[*] The Honorable Matthew J. Leitman, United States District Judge for the Eastern District of Michigan, sitting by designation.

[1] In June 2005, Perkins filed a petition in Fayette County Kentucky Family Court, seeking a DVO against Laubis, but the court dismissed the petition.

guilty of harassment when, with intent to intimidate, harass, annoy, or alarm another person, he or she: (a) Strikes, shoves, kicks, or otherwise subjects him to physical contact." KRS 525.070(1)(a). ID# 29.

In June 2010, Perkins filed another petition for a DVO against Laubis, and after a hearing, the Fayette County Kentucky Court granted the DVO. Pursuant to the DVO, Laubis surrendered his firearms to Fayette County Sheriff's Deputy, Sgt. R. Stephens pursuant to 18 U.S.G. § 922(g)(9), which prohibits any person who has been convicted of "a misdemeanor crime of domestic violence" from possessing firearms. *See* 18 U.S.C. § 922(g)(9). This DVO remained in effect against Laubis until December 15, 2010.

In May 2012, Laubis learned that three sheriff's deputies had been charged with taking confiscated guns and selling them or using them for personal use. Shortly thereafter, he contacted Witt about his confiscated weapons. Witt apparently told him that the matter was under investigation. Frustrated, Laubis obtained an agreed order from the Fayette Family Court on January 14, 2013, dismissing the DVO "[u]pon agreement of the parties," and ordering that Laubis's personal property, "specifically firearms held by the Fayette County Sheriff's Office, be returned to [Laubis]." ID# 7. Laubis contacted Witt, who refused to release the firearms on the grounds that the Lautenburg Amendment makes it illegal for an individual "who has been convicted in any court of a misdemeanor crime of domestic violence," to possess any firearm.

In turn, Laubis filed this suit against Witt, in her official and individual capacities, alleging that she misinterpreted federal law and violated his rights under the Second Amendment, the Due Process Clause, and the Takings Clause, as applied to the States through

the Fourteenth Amendment. He sought the return of the guns, general damages, special damages, punitive damages, and attorney's fees.

Witt filed a Rule 12(b)(6) motion to dismiss. *See* Fed. R. Civ. P. 12(b)(6). In response, Laubis argued that his conviction for harassment under KRS § 525.070 was not a "misdemeanor crime of domestic violence" under § 922(g)(9) based on our decision in *United States v. Castleman*, 695 F.3d 582 (6th Cir. 2012), *rev'd* 134 S. Ct. 1405 (2014), which held that the defendant's conviction of a Tennessee misdemeanor domestic assault did not qualify as a misdemeanor crime of domestic violence because it did not include an element of "strong and violent force." *Id.* at 588.

The district court granted Witt's motion to dismiss. The district court held that Laubis failed to state a Second Amendment claim because he "fail[ed] to indicate why the Second Amendment confers a right to bear *specific weapons* that were lawfully seized, as opposed to a general right to bear arms for self-defense," and also because "the Court can find no authority that would indicate such a right exists." ID# 80. The district court therefore concluded "a violation of the right to bear arms as alleged, is not plausible on its face." *Id.*

The district court held that Laubis failed to state a procedural due process claim because he hadn't pleaded any facts to show that the state procedcures were inadequate. ID# 80-81. That is, Laubis had not alleged that "he ha[d] attempted to enforce the state court order by returning to the state family court for a contempt proceeding, or other means of enforcement," or any other form of state court relief. *Id.* at 81.

The district court dismissed Laubis's taking clause claim because he failed to provide any authority suggesting that "lawfully seized firearms would be subject to a Takings Clause analysis

or would serve the purpose of the Takings Clause." ID# 81. Thus, even if Witt had misinterpreted federal law, Laubis had not established that she violated any of his constitutional rights.

Finally, the court found that Witt was protected from damages claims by sovereign and qualified immunity. The district court concluded that there was sovereign immunity for money damages claims against Witt in her official capacity because Laubis did not allege that Witt's conduct was the result of a custom, policy, or practice of the county government. The district court also held that Witt was also entitled to qualified immunity because it was "not clearly established that an officer's misinterpretation of the Lautenberg Amendment would deprive an individual of his or her constitutional rights." ID# 83. The district court held that *Castleman* "had nothing to do with violations of an individual's *constitutional rights*," and was based solely on statutory interpretation of a criminal statute. ID# 83-84.

Laubis challenges these rulings on appeal.

Six days after the district court's decision, the Supreme Court reversed this court's decision in *Castleman*, holding that a "misdemeanor crime of violence" as defined in 18 U.S.C. § 921(a)(33)(A)(ii), is satisfied for purposes of § 922(g)(9) by a common-law battery conviction. *United States v. Castleman*, 134 S. Ct. 1405, 1413 (2014).

## II.

We review Rule 12(b)(6) dismissals de novo. *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 274 (6th Cir. 2010). To survive a Rule 12(b)(6) motion to dismiss, the complaint must allege sufficient factual matter which, accepted as true, state a claim for relief that is plausible on its

face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Legal conclusions couched as factual allegations will not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To state a cognizable claim under 42 U.S.C. § 1983, a plaintiff must plead facts that establish (1) that he was deprived of a federally-protected right (2) by a person acting under color of state law. *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006).

## A.

The Second Amendment confers an individual right to keep and bear arms in one's home for the purpose of self-defense. *Dist. of Columbia v. Heller*, 554 U.S. 570 (2008); *see also McDonald v. Chicago*, 561 U.S. 742 (2010) (holding that the Second Amendment applies to the states through the Fourteenth Amendment). Thus, the district court's ruling that Laubis failed to identify a specific right to bear arms is incorrect. However, "the right secured by the Second Amendment is not unlimited," and the Supreme Court emphasized in *Heller* that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill," which are "presumptively lawful regulatory measures." *Heller*, 554 U.S. at 626-27 & 727 n.26. Relying on this language, a number of courts have held that § 922(g)(9) does not violate the Second Amendment. *See, e.g., United States v. Chovan*, 735 F.3d 1127 (9th Cir. 2013) (and cases discussed therein); *United States v. Booker*, 644 F.3d 12, 25 (1st Cir. 2011); *United States v. Skoien*, 614 F.3d 638 (7th Cir. 2010) (en banc); *United States v. White*, 593 F.3d 1199, 1206 (11th Cir. 2010). *Cf. United States v. Carey*, 602 F.3d 738, 741 (6th Cir. 2010) (stating that "*Heller* states that the Second Amendment right is not unlimited, and, in fact, it is specifically *limited* in the case of felon prohibitions;" holding that § 922(g)(1) does not

violate the Second Amendment); *United States v. Khami*, 362 F. App'x 501, 507-08 (6th Cir. 2010) (same).

Thus, Witt's refusal to return Laubis's firearms is not a violation of Laubis's Second Amendment rights if her actions were justified under § 922(g)(9). A "misdemeanor crime of domestic violence" under § 922(g)(9) is defined in § 921(a)(33)(A)(ii):

> (33)(A) Except as provided in subparagraph (C), the term "misdemeanor crime of domestic violence" means an offense that—
>
> (i) is a misdemeanor under Federal, State, or Tribal law; and
>
> (ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim.

Laubis pleaded guilty to "Harassment with physical contact pursuant to KRS § 525.070(1)(a), which provides: "(1) A person is guilty of harassment when, with intent to intimidate, harass, annoy, or alarm another person, he or she: (a) Strikes, shoves, kicks, or otherwise subjects him to physical contact."

On appeal Laubis argues merely that Witt's "arbitrary seizure was with[out] precedent or authority, in that Lautenberg had never been applied to misdemeanor harassment." App's Br. at 9. In the district court Laubis argued that Witt's interpretation and application of § 922(g)(9) to him violated his Second Amendment rights because he was not convicted of a domestic crime involving "physical force." At the time, this argument had the support of our majority opinion in

*Castleman*.[2]  *See Castleman*, 695 F.3d at 585-93.  After the Supreme Court's reversal of that decision, it is now clear that a conviction pursuant to KRS 525.070(1)(a) would qualify as a misdemeanor crime of domestic violence under § 922(g)(9) because "physical contact" meets the "physical force" element as defined in § 921(a)(33)(A)(ii).  *See Castleman*, 134 S. Ct. at 1413. Thus her refusal to return the firearms on the authority of § 922(g)(9) did not amount to a constitutional violation.

## B.

Laubis also challenges the district court's dismissal of his due process claim.  But in order to proceed in federal court with a § 1983 claim for deprivation of property without due process, "the plaintiff must attack the state's corrective procedure as well as the substantive wrong."  *Vicory v. Walton*, 721 F.2d 1062, 1066 (6th Cir. 1984).  *See Parratt v. Taylor*, 451 U.S. 527 (1981) (holding that in order to seek relief in federal court under § 1983 for property deprivations by state officials, a plaintiff must show that available state procedures were inadequate); *Vicory*, 721 F.2d at 1065-66 (applying *Parratt* to the seizure of the plaintiff's mobile home trailer as part of a criminal investigation by the county); *see also Mitchell v. Fankhauser*, 375 F.3d 477, 481-84 (6th Cir. 2004) (explaining that *Parratt* and *Vicory* apply to deprivations of property resulting from random, unauthorized acts of state employees). Therefore, dismissal of this claim was proper.

---

[2] Witt's conclusion was at odds with the majority decision in *Castleman*.  But it was consistent with the dissenting opinion's view.  *Castleman*, 695 F.3d at 593-97.  Furthermore, as the Supreme Court noted, the circuits were split on the question.  *See Castleman*, 134 S. Ct. at 1410.

## C.

Next, Laubis asserts that his weapons were unlawfully seized in violation of the Fifth Amendment Takings clause when Witt "defied" the Family Court order and refused to return the firearms after the DVO was dismissed.[3] The Fifth Amendment, made applicable via the Fourteenth Amendment, provides: "nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V. Laubis has not alleged that the purported taking of his firearms was for a "public use." In fact, his complaint alleges that three sheriff's deputies were "keeping them and/or selling them for personal use." ID# 33. Furthermore, even if Laubis had properly alleged a takings claim, he failed to establish that he first invoked any available state processes for obtaining compensation and received a final decision from the state entity denying the claim. *See Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194-95 (1985); *Streater v. Cox*, 336 F. App'x 470, 477 (6th Cir. 2009). As the district court observed, Laubis did not plead that he attempted to enforce the state court order. The district court did not err in dismissing this claim either.

## D.

Laubis challenges the district court's ruling that Witt in her official capacity was entitled to sovereign immunity for money damages claims. The district court correctly held that the official capacity suit against Witt should be treated as a claim against the county itself, *Shamazeizadeh v. Cunigan*, 338 F.3d 535, 556 (6th Cir. 2003); *Barber v. City of Salem, Ohio*, 953 F.2d 232, 237 (6th Cir. 1992); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1244 (6th Cir. 1989). However, the district court incorrectly stated Witt was entitled to sovereign immunity,

---

[3] Laubis points out that the firearms were lawfully *surrendered* by him and that the *seizure* occurred when Witt refused to return them despite the family court order.

since (1) counties are not entitled to Eleventh Amendment immunity, *Pucci v. Nineteenth Dist. Court*, 628 F.3d 752, 760 (6th Cir. 2010); (2) nor are they immunized from § 1983 liability by state sovereign immunity. *Wilson v. Elliott County*, 198 F. App'x 471, 474 (6th Cir. 2006) (per curiam). Nonetheless, as the district court correctly held, Laubis failed to allege that a custom or policy that was the "moving force" behind Witt's conduct, so municipality liability does not come into play. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978); *Heyerman v. County of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012); *Shamazeizadeh*, 338 F.3d at 556. Finally, and most importantly, Laubis failed to establish a constitutional violation, so he is not entitled to money damages or equitable relief.

## E.

Given our conclusion Laubis failed to allege any constitutional violation, the question of qualified immunity is moot.

## III.

For the foregoing reasons, the district court's judgment is **AFFIRMED.**